UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DECKERS OUTDOOR CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>PINKCOBOUTIQUE LLC, a Florida Limited Liability Company; QUKNHIYA HILL, an individual; QUANEISHA HILL, an individual; and DOES 1-10, inclusive,<br><br>Defendants. | Case No.  2:24-cv-03129-WLH-JC<br><br>**ORDER RE PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [24]** |

Before the Court is Plaintiff Deckers Outdoor Corporation's ("Plaintiff") Motion for Default Judgment against Defendants Pinkcoboutique LLC ("Pinkcoboutique"), Quknhiya Hill ("Quknhiya"), Quaneisha Hill ("Quaneisha"), and Does 1-10 (collectively, "Defendants").  (Mot., Docket No. 24).  For the reasons set forth below, the Court **GRANTS** the Motion.

**I.   BACKGROUND**

This case concerns violations of the Lanham Act – including trademark infringement, false designation of origin and false advertising – as well as unfair

competition in violation of California Business and Professions Code § 17200 *et seq.*, trademark infringement and unfair competition under California Common Law. ("Complaint," Docket No. 1).

Plaintiff is a Delaware corporation that "designs and markets footwear products . . . including UGG® products[.]" (*Id.* ¶ 5). UGG® brand is a "well-recognized premium comfort-leisure shoe brand[] . . . which prominently displays its highly-recognizable and federally-registered trademarks, including UGG® (the "UGG Mark.")." (*Id.* ¶ 11). Plaintiff, additionally, has registered U.S. trademarks for stylized variations of the UGG Mark (collectively, the "UGG Trademarks"). (*Id.* ¶ 15). The UGG Trademarks are often "displayed in more than one location on a single product[.]" (*Id.* ¶ 16).

Defendants Quaneisha and Quknhiya own and/or operate Pinkcoboutique's website ("Website") and Instagram account, through which Pinkcoboutique "engage[s] in the retail sale of a wide range of apparel and accessories[.]" (*Id.* ¶¶ 20-21). Appearing for sale are "certain footwear products that bear marks that are identical with, substantially indistinguishable from, or confusingly similar to one or more of [Plaintiff's] trademarks, including the UGG Mark (the "Accused Product")." (*Id.* ¶ 19). Plaintiff alleges that Defendants "manufactured, designed, imported into the U.S., advertised, marketed, offered for sale, and/or sold at least the Accused Product identified by name as 'Ribbon bow' through the PinkCoBoutique Website to consumers nationwide[.]" (*Id.* ¶ 22). Defendants included in the sale of the Accused Product an information card and label (the "Care Card and Label") with information about the source of the Accused Product and its required care. (*Id.* ¶ 23). Though the Accused Product "appears to be a counterfeit of the UGG® Bailey Bow II," the Care Card and Label identify the Accused Product, instead, as the UGG® Classic Clear Mini. (*Id.* ¶ 23). Plaintiff has not granted a license to Defendants, collaborated with Defendants, or provided permission to use Plaintiff's trademarks, trade dresses, or patents. (*Id.* ¶ 29).

1  Plaintiff filed a Complaint against Defendants on April 16, 2024 (Compl., Docket. No 1), and properly served Defendants on May 22, 2024. (Proof of Serv. upon Quaneisha Hill, Docket No. 12; Proof of Serv. upon Quknhiya Hill, Docket No. 13; Am. Proof of Serv. Upon Pinkcoboutique, Docket No. 21). Defendants failed to answer the Complaint, and the Clerk entered default on June 13, 2024, as to Quaneisha and Quknhiya (Default by Clerk, Docket No. 17) and on June 20, 2024, as to Pinkcoboutique. (Default by Clerk, Docket No. 23). Plaintiff moved for default judgment on July 12, 2024. (Mot. for Default J., Docket No. 24). Defendants have yet to file any responsive pleadings, nor have they requested the entry of defaults be set aside. (*Id.* ¶ 5).

## II. DISCUSSION

### A. Legal Standard

A court may enter default judgment upon a party's application when the defendant fails to defend itself and the clerk has entered default. Fed. R. Civ. P. 55. Generally, once the court clerk enters default, all factual allegations in the complaint—except those relating to the damages amount—are taken as true. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

A party moving for default judgment in this district must comply with the procedural requirements of Federal Rule of Civil Procedure 55(b)(2) and Local Rule 55-1. Local Rule 55-1 requires that an application for default judgment be accompanied by a declaration that states, inter alia, (1) "[w]hether the defaulting party is an infant or incompetent person" and (2) "[t]hat the Servicemembers Civil Relief Act (50 U.S.C. App. § 521) does not apply." L.R. 55-1.

If the procedural requirements are met, as they are here,[1] the court must determine whether default judgment should be granted by considering: (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (3)

---

[1] *See* Declaration of Jamie Fountain in Supp. of Mot. ("Fountain Decl."), Docket No. 24-2 ¶ 10.

the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of dispute as to any material facts; (6) whether default resulted from excusable neglect; and (7) the strong policy of the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471−72 (9th Cir. 1986). "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

**B.  Analysis**

As set forth below, Plaintiff has satisfied the *Eitel* factors, such that granting default judgment is proper.

First, Plaintiff will suffer prejudice absent default. Without default judgment, Plaintiff will likely be denied a course of recovery due to Defendants' failure to appear. A lack of available recourse is sufficient to demonstrate prejudice to Plaintiff. *Simple Design Ltd. v. Enerjoy Ltd.*, 710 F.Supp.3d 817, 823 (C.D. Cal. 2024); *see also PepsiCo, Inc. v. Cal. Sec. Cans,* 238 F.Supp.2d 1172, 1177 (C.D. Cal. 2002) (granting default judgment and permanent injunction because plaintiffs otherwise likely to be "without other recourse for recovery"). Thus, the first *Eitel* factor weighs in favor of granting the default judgment.

With respect to the second and third factors – the merits of Plaintiff's substantive claims and the sufficiency of the Complaint – the Ninth Circuit suggests district courts should examine whether a plaintiff has "state[d] a claim on which the [plaintiff] may recover." *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). Plaintiff's brought claims for trademark infringement under the Lanham Act, false designation of origin / false advertising under the Lanham Act, and the equivalent causes of action under California statutory and common law. (Compl. ¶ 1). Given that the standards for trademark infringement under the Lanham Act, as compared to comparable claims under California statutory and common law are substantially the same, the Court's analysis will focus on the claims under the Lanham Act. s*ee Conversive, Inc. v. Conversagent, Inc.*, 433 F.Supp.2d 1079, 1093-94 (C.D. Cal.

1  2006).  Furthermore, Plaintiff's analysis was limited to the claims under the Lanham
2  Act.  (Memo of P. & A. in Supp. of Mot. for Default J. at 12).

3        To state a claim for trademark infringement, a plaintiff must establish "(i) a
4  protected ownership interest in its trademark; and (ii) that [Defendants'] use of its
5  competing trademark is likely to cause consumer confusion." *Simple Design Ltd.*, 710
6  F.Supp.3d at 823; *see also Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124-25
7  (9th Cir. 2014); 15 U.S.C. § 1114(a)(1).  The underlying question is whether "the
8  public is likely to be deceived about the source of good or services" by Defendants'
9  product.  *Simple Design Ltd.*, 710 F.Supp.3d at 823.

10       Here, Plaintiff has sufficiently demonstrated the merits of this claim through its
11 well-pleaded Complaint.  Plaintiff has "registered U.S. trademarks for the UGG Mark
12 and stylized versions thereof[.]"  (Compl. ¶ 15).  This demonstrates a protected
13 ownership interest.  Defendants sold footwear bearing marks "identical with,
14 substantially indistinguishable from, or confusingly similar to . . . the UGG Mark."
15 (Compl. ¶ 19).  As Plaintiff notes, "…by defaulting, Defendants have admitted that its
16 use of the UGG Mark is likely to cause confusion among consumers regarding the
17 origin and quality of the goods used in commerce by Defendants."  (Memo of P. & A.
18 in Supp. of Mot. for Default J., Docket No. 24-1, at 9).  Accordingly, with respect to
19 the trademark infringement claim, the second and third *Eitel* factors are satisfied.

20       With respect to the claim for false designation of origin and false advertising,
21 the Lanham Act prohibits "'passing off'" or "selling . . . a good or service of one's
22 own creation under the name or mark of another." *Smith v. Montoro*, 648 F.2d 602,
23 604 (1981); 15 U.S.C. § 1125(a).  Here, the allegation is that Defendants created
24 counterfeit versions of Plaintiff's product.  (Compl. ¶¶ 19, 25-26).  The use of the
25 UGG Mark on products not created by Plaintiff provides a "false designation of origin
26 and a false representation that the goods are manufactured, offered, sponsored,
27 authorized, licensed by or otherwise connected with Plaintiff[] or come from Plaintiff
28 when in fact they do not."  (Mem. of P. & A. in Supp. of Mot. for Default J. at 12).

5

1   This is demonstrated by the fact that the Accused Product, which "appears to be a
2   counterfeit of the UGG® Bailey Bow II" is visually distinct from the authentic
3   version produced by Plaintiff. (Compl. ¶ 26). This is further supported by the fact
4   that, while appearing to most resemble Plaintiff's UGG® Bailey Bow II, the Accused
5   Product contained the Care Card and Label indicating it was a different product
6   produced by Plaintiff, the UGG® Classic Clear Mini. In sum, this amounts to
7   Defendants' "passing off" Plaintiff's goods as their own. Accordingly, Plaintiff has
8   satisfied the second and third *Eitel* factor with respect to their claim of false
9   designation of origin and false advertising.
10          Fourth, the sum of money at stake does not prevent entry of default judgment.
11  Evaluating the sum of money at stake "requires a comparison of the recovery sought
12  and the nature of defendant's conduct to determine whether the remedy is
13  appropriate." *United States v. Broaster Kitchen, Inc.*, No. CV1409421MMMPJWX,
14  2015 WL 4545360, at *6 (C.D. Cal. May 27, 2015). Here, the Lanham Act provides
15  for statutory damages. 15 U.S.C. § 1117(c). It provides for "(1) not less than $1,000
16  or more than $200,000 per counterfeit mark per type of goods or services sold, offered
17  for sale, or distributed, as the court considers just; or (2) if the court finds that the use
18  of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark."
19  *Id.* Notably, though Plaintiff alleges "willful" infringement, entitling it to up to
20  $2,000,000, it only requests $200,000 in statutory damages. (Mem. of P. & A. in
21  Supp. of Mot. for Default J. at 17). Given Plaintiff has established that at least one
22  counterfeit mark per type of good was utilized for goods sold, offered for sale, or
23  distributed, the recovery sought is comparable to the nature of Defendant's conduct.
24  It falls squarely within the applicable statutory range given the conduct alleged. This
25  is particularly where, given Defendants' alleged willfulness, Plaintiff could
26  theoretically request a higher award of damages. (*Id.* at 10). Accordingly, the fourth
27  *Eitel* factor weighs in favor of granting default judgment.
28

Fifth, the possibility of disputed material facts is improbable as Defendants were served with the Complaint more than four months ago and still have not appeared in the case. (*See* Proof of Serv. upon Quaneisha, Docket No. 12; Proof of Serv. upon Quknhiya, Docket No. 13; Am. Proof of Serv. upon Pinkcoboutique, Docket No. 21). Moreover, as discussed above, the Court must take the facts of the Complaint as true in evaluating a default judgment motion.

Sixth, it is unlikely that the default resulted from excusable neglect. Defendant Quaneisha was properly served the Complaint by substituted service upon her daughter, Quknhiya (Docket No. 12); Defendant Quknhiya was properly served the Complaint by personal service (Docket No. 13); and Defendant Pinkcoboutique was properly served the Complaint through Quknhiya, its Agent of Service (Docket No. 21). Thus, the sixth *Eitel* factor weighs in favor of granting the default judgment.

Seventh, though cases should be decided on their merits where possible, such preference must give way when it is not reasonably possible to reach such a decision. *See, e.g.*, *Truong Giang Corp. v. Twinstar Tea Corp.*, No. 06-03594 JSW, 2007 WL 1545173, at *13 (N.D. Cal. May 29, 2007). Because Defendants have declined to engage in the judicial process, as discussed above, default judgment is appropriate.

## III. REMEDIES

Plaintiff requests damages under the Lanham Act, legal costs and fees, and a Permanent Injunction.

### A. Damages for Violations of the Lanham Act

Section 1117(c) of the Lanham Act provides for statutory damages of "(1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark." Given Plaintiff has established that at least one counterfeit mark per type of good was utilized for goods sold, offered for sale, or distributed, it is appropriate to award $200,000 in damages, as requested. *See, e.g., Koninklijke*

*Philips Electronics, N.V. v. KXD Technology, Inc.*, 347 Fed.Appx 275, 276 (9th Cir. 2009) (upholding district court's default judgment award of $1,000,000 as statutory damages under the Lanham Act, where defendant had willfully sold counterfeit goods bearing plaintiff's trademark). Accordingly, the Court **GRANTS** damages in the amount of $200,000.

### B. <u>Legal Costs and Fees</u>

Section 35(a) of the Lanham Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). The Ninth Circuit instructs district courts to "examine 'the totality of the circumstances' to determine if the case was exceptional . . . exercising equitable discretion in light of the nonexclusive factors identified in *Octane Fitness* and *Fogerty*, and using a preponderance of the evidence standard." *SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, 839 F.3d 1179, 1181 (9th Cir. 2016). Such nonexclusive factors include "'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Id.* (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.,* 572 U.S. 545, 554 fn. 6 (2014)). Here, though it is important to deter the sale of counterfeit goods that infringe on trademarks, the Court struggles to conclude the case is exceptional. Merely alleging willfulness is not sufficient to demonstrate an exceptional case. *See, e.g., SunEarth, Inc.*, 839 F.3d at 1180 (highlighting the Supreme Court's clarification regarding the need to examine the 'totality of the circumstances.'). Accordingly, Plaintiff's request for attorneys' fees is **DENIED.**

Though Plaintiff has identified its costs as $705, it has not provided a basis for such an award. (Mem. of P. & A. in Supp. of Mot. for Default J. at 18). Accordingly, the request for costs is **DENIED**.

8

### C. **Permanent Injunction**

Injunctive relief is available under the Lanham Act. 17 U.S.C. § 502(a); 15 U.S.C. § 1116(a). "The Lanham Act gives the court 'power to grant injunctions according to the rules of equity and upon such terms as the court may deem reasonable, to prevent the violation' of a mark holder's rights. 15 U.S.C. § 1116(a)." *PepsiCo, Inc.*, 238 F.Supp.2d at 1177.

To obtain injunctive relief, a plaintiff must show irreparable harm and inadequacy of legal remedies. *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506-07 (1959). In the context of a trademark infringement case, upon a finding of infringement, Plaintiff is "entitled to a rebuttable presumption of irreparable harm." *Id.* § 1116(a); *see also Simple Design Ltd.*, 710 F.Supp.3d at 827. The question often becomes whether "[d]enying injunctive relief would force a plaintiff to endure continuing infringement and to bring successive suits for money damages." *Foxtrap, Inc. v. Foxtrap, Inc.*, 671 F.2d 636, 639 (1982).

Here, it seems that Plaintiff will suffer irreparable harm, should a permanent injunction not issue. The sale of counterfeit goods may irreparably harm Plaintiff's "brand and reputation as Defendant's infringing conduct" may otherwise continue. (Mem. of P. & A. in Supp. of Mot. for Default J. at 19); *see Phillip Morris USA, Inc. v. Shalabi*, 352 F.Supp.2d 1067, 1075 (C.D. Cal. 2004) (highlighting plaintiff's investment in advertising and promoting, reputation, and goodwill in finding irreparable harm); see *also Chanel Inc. v. Lin.*, 2010 WL 2557503, *11 (N.D. Cal. 2010) (establishing the likelihood of confusion due to the defendants' use of counterfeit Chanel Marks supported the contention that plaintiff would suffer irreparable harm were injunction not granted.). Furthermore, it is not clear that legal remedies would be adequate where the behavior would simply continue. Given the "non-appearing Defendant[s], it cannot be said that it is 'absolutely clear' that Defendant[s'] allegedly wrongful behavior has ceased and will not begin again." *PespiCo, Inc.*, 238 F.Supp.2d at 1178 (granting a motion for default judgment and

request permanent injunction enjoining defendant from using plaintiffs' trademarks on counterfeit products). Accordingly, the court **GRANTS** a Permanent Injunction, enjoining the Defendants' further manufacture, distribution, sale, advertisement, or offering for sale "products featuring designs that infringe upon Deckers' UGG Mark or [Plaintiff's] product." (Mem. of P. & A. in Supp. of Mot. for Default J. at 19).

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Default Judgment is **GRANTED** as follows:

1. Judgment shall be entered in favor of Plaintiff Deckers Outdoor Corporation against Defendants Quaneisha Hill, Quknhiya Hill, and Pinkcoboutique in the amount $200,000 which represents statutory damages under the Lanham Act;

2. The Court issues a Permanent Injunction, enjoining Defendants from further infringement of Plaintiff's UGG Mark;

3. All pretrial and trial dates and deadlines are **VACATED**.

**IT IS SO ORDERED.**

Dated: October 21, 2024

HON. WESLEY L. HSU
UNITED STATES DISTRICT JUDGE